*228 Opinion OP THE COURT,
BY JüDGE OWSLEY.
ON the 16th day of April, 1819, a contaact was made between George Shackleford and Mitchell Royster, and re(juce(j j.Q writing by an article of that date. By the contract, Shackleford sold the lot of ground near Richmond, which he had previously purchased of Dr. Whl-Letcher, to Royster, and on his part stipulated to deliver the possession thereof the next day, and coyenanted to convey the lot as it was then enclosed, and *229 its appurtenances, to Royster, by a general warranty deed, against the first of November, 1820; in consideration whereof, Royster was to pay one thousand dollars, one half in six months from the date of the contract, and the other half within twelve months, and executed separate notes to Shackleford therefor. Royster also covenanted on his part, to deliver the possession of two other lots in the town of Richmond, to Shackleford, on the next day, and to convey the same by general warranty deed, to Shackleford, against the first of November, 1820. These two lots which were to be conveyed 'by Royster, were estimated by the parties at two thousand dollars, making, in connexion with the two notes of five hundred dollars each, the sum of three thousand dollars, the entire consideration which was to be given by Royster to Shackleford, for the lot sold by him.
parchas^deed^wlthout objecting the tife of” a^for mer vender not relinnot after-wards object íook'to”^”S* covenant of warranty in deed-A^oourt of e-cases ofVve” ry peculiar & extraordinaonly,Compel a purchaser of land to retoR6 of damages which he may the render, for failing to convey.
*229 One of the five hundred dollar notes was afterwards assigned by Shackleford to Joel Embry, who, after the time of payment had elapsed, brought suit thereon at law, and recovered judgment against Royster. ter then exhibited his bill in equity against and Embry. After setting out the preceding facts, Royster charges, that supposing Shackleford to be equitably entitled to the lot, under a previous purchase of Dr. Letcher, he made the contract without having inspected the writings which had been executed between Letcher and Shackleford; but he has since been formed that George Shackleford, with whom he contracted, derived, under his purchase from Letcher, an equity in but. one moiety of the lot; that the purchase from Letcher was made in the joint names of George and Benjamin Shackleford, the latter of whom has since departed this fife, without having disposed of his interest in the lot, leaving many children, all of whom are fan is, and that the purchase money agreed to be given by the Shacklefords for the lot, has never been paid to Letcher, who still asserts alien upon the lot for same. Royster asked and obtained an injunction against the judgment at law, recovered by Embry, and prayed the contract between him and Shackleford to be cancelled, &c.
George Shackleford answered, admitting that upon making the purchase of Letcher, the writings were exe.cuted in the joint names of him and Benjamin Shackle-his but he denies that the contract made the *230 co-operation or consent of Benjamin, or any other person *eSa^y authorised by him. He states that Benjamin and himself were engaged in a partnership, formed for the purpose of purchasing tobacco for the New-Orleans market, and supposing that Benjamin might be inclined to become interested, in the lot; he made the purchase of Letcher, and drew the writings in the joint names of Benjamin and himself; but he alleges fbat the purchase was made by him without consulting Benjamin, and that before Benjamin ever ratified or confirmed the purchase, he departed this life. He states that Royster was fully apprised of the contract with Letcher, before he purchased, having previously seen and inspected the writings which were ex-by Letcher and the Shacklefords. He, moreoverj states that suit was brought by Letcher, against the administrators of Benjamin Shackleford, upon the bond given for the purchase money, and that the administrators filed a plea of non est factum; that he has since paid the purchase money to Letcher, and received from him a title to the lot; and that in pursuance to his covenant, he did, on the first of November, 1820, actually convey, by deed of general warranty, the lot to Royster, who accepted the same. He denies that the heirs of Benjamin Shackleford have or pretend any claim to the lot, and by his answer, which he makes a cross bill, he makes Letcher, the administrators and the heirs of Benjamin Shackleford, defendants, and calls upon them severally to respond to his various allegations, &c.
Letcher admits the contract to have been made by George Shackleford, by whom the writings were signed in his own name, as well as the name of Benjamin Shackleford. He admits that he has received the purchase money from George Shackleford, and conveyed the lot to him.
The administrators and heirs of Benjamin Shackle-ford each deny that their intestate ever contracted, or authorised any other person to contract with Letcher for the lot. They deny the authority of George Shackleford to execute the writings to Letcher in the name, of their ancestor, and they disclaim all interest in the lot, &c.
Royster, by an amendment to his bill, repeats his ignorance of the contract between Letcher and Shackle- *231 for^1, when he made the purchase of Shackleford. He admits, that on the first of November, 1820, a paper was handed to him by George Shackleford, which, after reading, he discovered to be a deed for the lot; but he denies having accepted it in discharge of the covenant of Shackleford. He states, that upon discovering it to be a deed, he informed Shackleford his counsel was absent, and that he knew not what to do; but he would, the first opportunity, consult his counsel, and probably the business could be arranged; that he applied to his counsel, and being advised to return the deed to Shackleford, he accordingly did so. He states, that when the deed was presented to him, Shackleford exhibited no evidence of title, and he is still unadvised whether or not Shackleford was possessed of the title. He, moreover, states that George Shackleford has prosecuted suit upon his covenant to convey the two lots in the town of Richmond, and has succeeded in recovering a judgment at law for two thousand dollars, the price at which those lots were estimated in the contract with Shackleford; but he charges that he has the legal title to those lots, and insists that Shackleford should be compelled to receive the title in lieu of the damages, if the court should be of opinion that the contract ought not to be cancelled. He asked and obtained an injunction against the damages for which Shackleford had . recovered judgment at law, &c.
The court below pronounced a decree dismissing Royster’s bill and dissolving his injunction with damages and costs. Shackleford was also decreed to pay the defendants to his cross bill, their costs. To reverse that decree, Royster has prosecuted this writ of error with supersedeas.
From the preceding statement, it will be perceived that Royster’s object in exhibiting his bill and amended bill, is twofold: 1st, To obtain a cancelment of the contract between him and Shackleford; or, if that cannot be efifected, 2dly, to compel Shackleford, in lieu of the two thousand dollars for which he recovered a judgment at law, to accept the title to the two lots which Royster covenanted to convey as part of the consideration for which Shackleford sold the lot near Richmond. In reviewing the decree of the court below, we will, therefore, pursue the order taken by Royster in his bill, and enquire whether or not, under either aspect,* he *232 has shown himself entitled to the aid of a court of equity.
Preliminary to this inquiry, it is proper to premise, that in strict accordance to his stipulations, Shackleford appears to have executed and delivered to Royster, on the first November, 1820, a deed of conveyances, with a clause of general warranty, for the lot sold by him. At the time the deed was delivered, it is true, Shackle-ford failed to exhibit to Royster his claim of title, as derived from the commonwealth; but the deed is proved to have been accepted by Royster, without requiring any additional evidence of Shackleford’s ability to convey, and the title papers now contained in the record show conclusively that Shackleford was at that time possessed of the legal title.
It is apparent, therefore, that there exists no sufficient cause for cancelling the contract, on the score of Shackleford’s negligence in not promptly conveying the legal title of the lot to Royster. It is not, however, exclusively on the score of neglect in Shackleford’s not conveying the legal title, that a cancelment of the contract is .sought by Royster. The contract is sought to be cancelled mainly on the ground of an outstanding equity in the heirs of Benjamin Shackleford, to a moiety of the lot, and a fraudulent concealment of that equity from Royster, at the time of contracting, as well as at the time of executing and delivering the deed of conveyance by George Shackleford.
Were it admitted that the heirs of Benjamin Shackle-ford held an equity in a moiety of the lot, the propriety of decreeing a cancelment of the contract would nevertheless not be perceived; for the evidence conduces satisfactorily to prove, that previous to the contract, and whilst the parties were discoursing upon the subjuct, Shackleford presented his written contract with Letcher, for the lot, to Royster, for his inspection and examination. Royster must, therefore, be presumed to have known the nature and extent of George Shackleford’s claim upon Letcher, for the lot, before he concluded his purchase, and of course ought not to be al-. lowed to avoid that contract, on account of any alleged defect in Shackleford’s equity, which appears on the face of his contract with Letcher. But we do not admit that the heirs of Benjamin Shackleford have any equity in any portion of the lot. The covenant which *233 Letcher gave to convey the lot, it is true, purports to oblige him to make the title to George and Benjamin Shacldeford, jointly, and the evidence shows conclusively that the bonds given to Letcher for the price, were executed in the joint names of both the Shacklefords; but it is also in proof, that the contract with Letcher was made by George Shackleford alone, and the covenant of Letcher accepted by him, and the bonds to Letcher executed by him, without having previously consulted or obtained the consent of Benjamin Shackle-ford. And not only so, but in. the suit Letcher brought against the administrators of Benjamin Shackleford, upon one of the bonds given for the price of the lot, they controverted his right to recover, by pleading non est factum; and in this suit, the administrators, as well as the heirs of Benjamin Shackleford, each deny that their intestate, either in person or by any lawfully authorised agent, ever assented to the contract with Letcher, and disclaim all interest in the lot.
Under these circumstances, it would be absurd, to suppose that the heirs of Benjamin Shackleford may hereafter assert claim to, and recover any part of the lot. Were it even conceded, that as infants they will not, after arriving at full age, be estopped by their answers, from controverting the facts therein admitted and relied on in this contest, we apprehend, the circumstance of the administrators’ having successfully repelled the attempt of Letcher to subject the personal estate of their intestate to the payment of the price agreed to be given for the lot, should at all times induce a sound discretion of a court of equity, to withhold its aid in favor of any attempt which may be made by the heirs to claim an interest in the lot.
In argument, an objection was taken to the title of Shackleford, which it may be proper here to notice. In deducing his title from the commonwealth, Shackle-ford exhibited a deed from William Miller, through whom the title appears to have passed, and that deed seems never to have been signed and acknowledged by Miller’s wife, in the mode prescribed by law for relinquishing the right of dower by femes covert; and for this omission in not procuring a regular relinquishment of Mrs. Miller’s right of dower, the objection was taken in argument to Shackleford’s title. If this objection had been made before Royster accepted the deed of *234 conveyance from Shackleford, it would certainly have been deserving much greater weight. Whilst the .title remained incumbered with the dower right of any of the femes covert through whose husbands the title passed,-Royster could not have been compelled to receive a conveyance from Shackleford, in discharge of his covenant to make a good title; but after having accepted a conveyance from Shackleford, the objection of Royster, we apprehend, comes too late. He must now abide by that conveyance, and look to the covenant of warranty therein contained, for indemnity, should Mrs. Miller’s claim of dower ever be asserted.
The decree of the court below is, therefore, correct in refusing to cancel the contract.
We are also of opinion that the court was correct in not compelling Shackleford, in lieu of the damages which he has recovered at law, to accept a title to the two lots, which, by the contract, were to have been conveyed by Royster. There may possibly be cases, where, after a recovery at law, it might be competent for a court of equity to relieve against the judgment, and specifically enforce the contract upon which the recovery is had; but, to authorise the court to do so, the circumstances of the case must be of a very peculiar and extraordinary character, and such as are not shown to exist,in the present case. We have already seen, that in making the contract, Shackleford has been guilty of no fraud, and that he has promptly performed every stipulation of the contract on his part. It cannot, therefore, be in consequence of any improper conduct on the part of Shackleford, that Royster failed to perform the contract on his part. The failure of Royster must rather be ascribed to his own laches, in not obtaining the title to the lots in sufficient time to enable him to comply with his covenant; and, of course, he can have no just claim upon the equity of the court, to change the course of the law, and compel Shackleford to relinquish his legal right to the damages recovered at law, and accept the title which should long since have been made.
The decree must be affirmed with costs and damages upon the damages given in the court below.